IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER M. HINSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-025 |
| | ) | |
| COI CUMMINGS; MARY ALSTON, | ) | |
| Medical Director; RUTHIE SHELTON, | ) | |
| Deputy Warden; and BRANDON | ) | |
| COUSSENS, SART Team, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Hays State Prison in Trion, Georgia, brought this case pursuant to 42 U.S.C. § 1983, concerning events allegedly occurring at August State Medical Prison ("ASMP") in Grovetown, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Before the Court is Defendants Cummings, Alston, and Shelton's pre-answer motion to dismiss, (doc. no. 22), and Defendant Coussens's pre-answer motion to dismiss, (doc. no. 30), (motions together as "Defendants' motions") which the Court **REPORTS** and **RECOMMENDS** be **GRANTED** and this case **DISMISSED** and **CLOSED**.

**I.     BACKGROUND**

**A.     Plaintiff's Amended Complaint**

With respect to Defendants Cummings, Alston, Shelton, and Coussens, the remaining Defendants in this action, Plaintiff alleges the following facts.

On March 21, 2017, a fellow inmate beat and raped Plaintiff after Defendant Cummings let him into Plaintiff's cell at ASMP. (Doc. no. 9, pp. 5, 14.) Plaintiff complained to personnel several times, but they lost his complaints and evidence of his report and failed to investigate his allegations. (Id. at 14.) Defendants Alston, Coussens, and Shelton refused to provide mental health or medical treatment to Plaintiff after he was beaten and raped and for being housed in 12 A 1204 while transgender. (Id. at 14-15.)

**B.     Grievance and Procedural History**

On March 28, 2017, Plaintiff filed grievance number 240280, complaining he was not receiving his hormone therapy shots. (Doc. no. 22-6, p. 2.) On May 5, 2017, prison officials partially granted the grievance because Plaintiff was due to receive the hormone treatment he was seeking. (Id. at 3; see also doc. no. 22-5, p. 2.) There was no appeal. There is no record of any other grievance filed within two months of the March 21, 2017 alleged beating and rape.

On August 30, 2018, Defendants Cummings, Alston, and Shelton's filed a pre-answer motion to dismiss. (Doc. no. 22.) On October 2, 2018, Defendant Coussens filed his pre-answer motion to dismiss. (Doc. no. 30.) Defendants' motions argue Plaintiff failed to properly exhaust administrative remedies concerning Plaintiff's remaining claims. (Doc. nos.

22, 30.) Plaintiff never responded to either motion to dismiss despite the Court warning him of the effect such a motion could have.

## II. DEFENDANTS' MOTIONS TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS LAWSUIT.

### A. The Legal Framework

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-

26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### B. The Administrative Grievance Procedure

Based on the date of the alleged incident, the administrative grievance procedure applicable in this case is the version of the GDOC's Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015. (Doc. no. 22-3.) The administrative remedies procedure commences with the filing of the Original Grievance, and the inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to sign the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(4). "The complaint on the Grievance Form must be a single issue/incident." Id. § VI(D)(2). Once the Counselor gives the grievance to the Grievance Coordinator, they will

screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(3), (5)(a). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision, but a onetime ten calendar day extension may be granted. Id. § VI(D)(7).

Grievances involving sexual assault or physical force involving non-compliance with policies are automatically forwarded to Internal Investigations Unit and/or the PREA Coordinator. Id. § VI(D)(8)(a). Once referred, the grievance process terminates, and the inmate will receive notice and must sign a copy of said notice to be filed with the prison's local files. Id. § VI(D)(8)(b-d). Internal Investigations has ninety days from the date of the original grievance to issue a decision. Id. § VI(D)(8)(e). An extension of up to seventy days may be granted. Id. § VI(D)(8)(f). An inmate may not appeal the Warden's decision to refer the grievance to the Internal Investigations. Id. § VI(D)(8)(h).

The inmate then has seven calendar days from the date they receive the response from the Warden or Internal Investigations to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the

6

Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete. Id. § VI(E)(7).

### C. Plaintiff's Failure to Exhaust

Taking Plaintiff's factual allegations as true according to the first step under Turner, Plaintiff's claims are not subject to dismissal because Plaintiff alleges to have filed grievances concerning being beaten and raped in his cell, along with not receiving appropriate medical treatment. (Doc. no. 9, p. 14.) Although Plaintiff does not note every step of the grievance procedure or specifically state a grievance was filed against every Defendant, he does allege he reported the incident, "they lost his complaints," and there was a failure to investigate. (Id.) Additionally, as a part of the form § 1983 prisoner complaint, Plaintiff alleges he completed the grievance procedure as to his failure to protect and deliberate indifference claims. (Id. at 7.) Therefore, in accordance with the first step of the Turner analysis, the instant complaint is not subject to dismissal, and the Court must proceed to step two of the analysis and make specific findings to resolve the factual dispute. Turner, 541 F.3d 1082-83.

Under the second step of Turner, Plaintiff's claim should be dismissed because he failed to submit a grievance concerning the events alleged to have occurred on March 21, 2017. (See doc. nos. 22-5, 22-6.) Plaintiff had ten calendar days from the date of the incident on March 21, 2017, to file a formal grievance. SOP IIB05-0001 § VI(D)(4).

Defendants argue and provide Plaintiff's grievance history showing the only grievance filed within ten calendar days of March 21, 2017, was grievance 240280. (Doc. no. 22-1, pp. 5-7; 22-5.) In Grievance 240280, Plaintiff's only complaint was he did not receive the proper hormone shot treatment. (Doc. no. 22-6, p. 2.) Nowhere in this grievance does Plaintiff mention or infer being beaten, raped, or refused treatment for the alleged attacks. (Id.) Additionally, Defendants offer an uncontroverted declaration from the grievance coordinator at ASMP explaining the grievance procedure, the procedure was available to Plaintiff, Plaintiff filed seven grievances between March 29, 2016 and December 15, 2017, only one grievance was filed within ten days of March 21, 2017, and the one grievance did not relate to Plaintiff's claims here. (Doc. no. 22-2.)

Plaintiff fails to controvert any evidence presented by Defendants because he never responded to either motion to dismiss. Under Local Rule 7.5, "[f]ailure to respond within the applicable time period shall indicate that there is no opposition to a motion."

Plaintiff alleges in his amended complaint he reported the beating and rape by another inmate, and the prison has lost his complaints and evidence of his reports. (Doc. no. 9, p. 14.) However, because Plaintiff has failed to offer any evidence the grievance procedure was not properly followed by Defendants or ASMP, there is no factual dispute defeating the evidence established by Defendants in favor of dismissal. See Kozuh v. Nichols, 185 F. App'x. 874, 876-78 (11th Cir. 2006) (holding an inmate did not properly exhaust grievance process where he offered only allegations of records and documents being destroyed).

As Plaintiff never filed a grievance concerning being beaten, raped, or refused treatment for such attacks, he fails to satisfy the exhaustion requirement. Woodford, 548

U.S. at 90; Johnson, 418 F.3d at 1159. Therefore, Plaintiff's claim is procedurally defaulted, Johnson, 418 F.3d at 1159, and Defendants' motions should be granted. In light of the Court's conclusion Defendants' motions to dismiss should be granted due to Plaintiff's failure to exhaust his administrative remedies, it is unnecessary to address the merits of Defendants' additional arguments.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motions to dismiss be **GRANTED**, (doc. nos. 22, 30), and this case **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 25th day of October, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA